IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CRIMINAL CASE NO. 1:08-cr-00128-MR-WCM-8

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ASHTON DURRELL FARLEY, ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court upon the Defendant's *pro se* "Petition to Reduce Sentence Pursuant to the First Step Act of 2018" [Doc. 814], as supplemented by the Federal Public Defender of the Western District of North Carolina [Doc. 822].

**I.   BACKGROUND**

In March 2009, the Defendant pled guilty pursuant to a written plea agreement to one count of conspiracy to possess with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 846. [Docs. 2, 173]. At the time of his offense, that charge carried a statutory penalty range of ten years to life and a minimum supervised release term of five years. 21 U.S.C. § 841(b)(1)(A).

As part of the Defendant's Plea Agreement, the parties stipulated that "[t]he amount of cocaine base that was known to or reasonably foreseeable by the defendant was at least 50 grams but less than 150 grams." [Doc. 173 at ¶ 6.a.]. At sentencing, the Court calculated an applicable guidelines range of 63 to 78 months. [Doc. 268: PSR at ¶ 65]. Because the 120-month mandatory minimum exceeded that range, the governing guidelines range became 120 months. [Id.]. The Court imposed a sentence of 120 months and the minimum supervised release term of five years. [Doc. 311: Judgment].

The Defendant was released from prison and began his term of supervised release in November 2017. Less than a year later, in October 2018, the Defendant's supervising probation officer filed a petition to revoke the Defendant's supervised release. [Doc. 755]. The petition alleged that on September 27, 2018, the Defendant sold 1.8 grams of heroin to a confidential informant and that during a search of the Defendant's home, agents found nearly nine grams of heroin, plus marijuana, Tramadol, Clonazepam, Alprazolam, and two sets of digital scales containing white residue. [Id. at 1-2]. The petition also alleged that the Defendant had failed to notify his probation officer that he had been arrested or questioned by police, as required under the conditions of his supervised release. [Id. at 2].

2

Further, the petition alleged that the Defendant had failed to make required payments toward his court-appointed counsel fees. [Id.]. The probation officer stated in the petition that the Defendant's adjustment to supervised release had been "unsatisfactory," as he had failed to maintain employment and had associated with negative peers. [Id. at 4].

At the revocation hearing, the Defendant admitted that he had failed to make payments to the Court as required by the conditions of his supervised release. [Doc. 785 at 1]. The Court found that the Defendant had committed three violations of his supervised release conditions, including one grade A violation, that being the controlled substances New Law Violation (violation number 2). [See Docs. 755, 785]. Because the Defendant's underlying § 841 offense was classified as a Class A felony, he faced a guidelines range of 27 to 33 months for his supervised-release violation. [See Doc. 755 at 5 (citing U.S.S.G. § 7B1.4(a))]. If his underlying offense had been classified as a Class B felony, the guidelines range would have been 15 to 21 months. See U.S.S.G. § 7B1.4(a)).

The Court sentenced the Defendant to 27 months in prison and an additional term of 36 months of supervised release. [Id. at 1-2]. The Defendant's current projected release date is September 8, 2020. [Doc. 820: Supp. PSR at 3].

The Defendant now moves for a reduction of his sentence under Section 404(b) of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). [Docs. 814, 822].

## II. DISCUSSION

On August 3, 2010, the Fair Sentencing Act of 2010, Pub. L. No. 111-220, went into effect. Section 2 of the Act increased the quantity of cocaine base required to trigger the enhanced penalties of Section 841. Specifically, it raised the (b)(1)(A) threshold from "50 grams" to "280 grams" and the (b)(1)(B) threshold from "5 grams" to "28 grams." Section 3 eliminated the mandatory minimum for simple possession of cocaine base under 21 U.S.C. § 844(a). Congress did not apply these changes retroactively to defendants sentenced before the Act's passage. Accordingly, the Defendant could not obtain relief under the Fair Sentencing Act.

On December 21, 2018, the President signed into law the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Section 404 of the Act gives retroactive effect to the changes made by Sections 2 and 3 of the Fair Sentencing Act of 2010. Section 404(a) defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." 132

4

Stat. at 5222. Section 404(b) then provides that "[a] court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372) were in effect at the time the covered offense was committed." Id. A defendant serving a term of imprisonment for violation of the terms of his supervised release may be eligible for a reduction of his revocation sentence if his original conviction falls within the First Step Act's definition of a "covered offense." United States v. Venable, 943 F.3d 187, 193 (4th Cir. 2019); United States v. Wirsing, 943 F.3d 175, 185 (4th Cir. 2019).

Here, the Defendant is eligible for relief under the First Step Act because he was originally convicted of a "covered offense" under Section 404(a)'s definition. His original offense was committed before August 3, 2010; he was subjected to the enhanced statutory penalties under § 841(b)(1)(A); and those statutory penalties were "modified by Section 2 . . . of the Fair Sentencing Act." Moreover, the Defendant's original sentence has not been previously reduced by the operation of Sections 2 or 3 of the Fair Sentencing Act of 2010, and no previous motion has been made by the Defendant pursuant to Section 404 of the First Step Act of 2018.

Applying the Fair Sentencing Act to the Defendant's original conviction would reduce the statutory maximum sentence that he was facing from life

5

under Section 841(b)(1)(A) to 40 years under Section 841(b)(1)(B), thereby converting the Defendant's underlying offense of conviction from a Class A felony to a Class B felony. That change in classification would in turn reduce the revocation guidelines range he was facing for his current sentence from 27-33 months to 15-21 months. See 18 U.S.C. § 3559(a); U.S.S.G. § 7B1.4(a). It also reduced the maximum term of imprisonment available on revocation from 60 months to 36 months (but the Defendant was sentenced within that range).

Having determined that the Defendant is eligible for a reduction in his current sentence, however, is not the end of the inquiry. The next step is to determine the extent to which the Defendant's current sentence *may*, in the Court's discretion, be reduced.

The Defendant contends that a number of factors—including the now-applicable guidelines range, the fact that the Defendant served a significantly longer sentence for his original offense than would be required under current law, and his rehabilitation efforts while incarcerated—all support a sentence of time served and a supervised release term of two years. [Doc. 822 at 8-10]. In his reply, the Defendant additionally argues that the current COVID-19 pandemic has created "dangerous conditions" at the facility where he is

6

currently incarcerated and also serves as further justification for a reduced sentence. [Doc. 826 at 3].

Considering the relevant § 3553(a) factors[1], the Court concludes in the exercise of its discretion that the Defendant's sentence should not be reduced. Less than a year after he was released from a ten-year custodial sentence, the Defendant possessed numerous controlled substances and two digital scales with white-powder residue on them, supporting the inference that he was again trafficking in controlled substances. The Defendant's quick return to the same sort of criminal activity following his release demonstrates that the Defendant's breach of trust on supervised release was substantial. Thus, the fact that the Defendant later incurred relatively few disciplinary fractions while incarcerated holds little weight. Further, while application of the Fair Sentencing Act would have altered the classification of the Defendant's underlying drug-trafficking offense from a Class A to a Class B felony and would have resulted in a lower guideline range for his revocation sentence, the fact remains that the Defendant committed multiple, serious violations of the conditions of his supervised

---

[1] The § 3553(a) sentencing factors that apply to supervised release violations include (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to afford adequate deterrence to criminal conduct; and (4) the need to protect the public from further crimes of the defendant, among others. 18 U.S.C. § 3583(e).

release relatively soon after his release from prison. Considering all these factors, the Court concludes that the Defendant's revocation sentence of 27 months is still warranted and therefore the Court in its discretion declines to reduce his sentence.

The Defendant argues that he should receive a sentence reduction because he served a longer sentence for his original offense than he would serve if he had been convicted under current law. The Defendant's original sentence, however, was lawfully and correctly imposed under the law in effect at the time of his conviction. Additionally, the revocation sentence imposed by this Court was to punish the Defendant for the breach of trust resulting from his violations of the conditions of his supervised release, which he committed *after* serving his custodial sentence. Thus, the fact that there is a possibility that the Defendant may have received a different sentence for his original offense under current law does not weigh in favor of reducing the Defendant's current revocation sentence.

Finally, the Court is mindful that the ongoing COVID-19 pandemic is a concern for both prisoners and staff alike in many facilities, including the institution where the Defendant is housed, as well as in many locations outside of such institutions. While the ongoing threat posed by COVID-19 is

8

Case 1:08-cr-00128-MR-WCM   Document 827   Filed 06/24/20   Page 8 of 9

something that all avenues of our society must contend with, the Court declines to reduce the Defendant's sentence solely on that basis.[2]

**IT IS, THEREFORE, ORDERED** that the Defendant's "Petition to Reduce Sentence Pursuant to the First Step Act of 2018" [Docs. 814, 822] is **DENIED**.

**IT IS SO ORDERED.**

Signed: June 24, 2020

Martin Reidinger
Chief United States District Judge

---

[2] Should the Defendant wish to seek compassionate release on such grounds, he should do so by exhausting his administrative remedies with the Bureau of Prisons.